AO 91 (Rev. 02/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

FILED IN OPEN COURT
DATE 7/3/13
BY  J Turner
DEPUTY CLERK

HARRISONBURG DIVISION, W.D. of VA

| United States of America | ) |
|---|---|
| v. | ) |
| Joaquin GONZALEZ CHAIREZ | ) Case No. 5:13 mj 00018 |
| | ) |
| Defendant | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __07/02/2013__ in the county of __HIGHLAND__ in the __WESTERN__ District of __VIRGINIA__, the defendant violated __21__ U.S.C. § __841(a)(1) AND 841(b)(1)(A)__, an offense described as follows:

**CULTIVATE MARIJUANA ON FEDERAL PROPERTY**

This criminal complaint is based on these facts:

**SEE ATTACHED SHEETS**

☑ Continued on the attached sheet.

_____
Complainant's signature

Larry Fisher, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7-3-2013

_____
Judge's signature

City and state: HARRISONBURG, VA

James G. Welsh, USMJ
*Printed name and title*

On June 21, 2013, Forest Service Law Enforcement Officer Chip Buchanan received information from a Virginia State Police drug task force officer regarding a marijuana cultivation growing on property under the jurisdiction of the George Washington National Forest in Highland County, Virginia. The described location is within the Western District of Virginia. The task force officer informed Officer Buchanan that he investigated a marijuana cultivation site on June 20 and estimated that there were approximately 250 marijuana plants growing at the site.

A plan of investigation was developed and on July 2, a team of Federal Agents and members of the State Police drug task force deployed to the general area of the marijuana cultivation site. The team entered the National Forest and moved to the marijuana cultivation site. The team prepared to initiate the plan of investigation. Forest Service Special Agent Larry Fisher began to deploy a covert video camera surveillance system with a task force officer while Officer Buchanan and another task force officer maintained site security. Officer Buchanan observed the site appeared to be extensively cultivated. There were numerous gardening tools and a sprayer at the site. The plants were not randomly dispersed but appeared to be arranged in rows. There were some food wrappers strewn about the site. The soil at the site appeared to be cultivated and free of the normal forest floor vegetation. Officer Buchanan has investigated marijuana cultivations and the site was consistent with his past investigative experience.

A task force officer observed what appeared to be a tent located approximately 30 to 40 yards from the marijuana cultivation site. A footpath, worn down to bare earth, connected the marijuana cultivation site to the tent. The tent represented an unknown risk to the team. Officer Buchanan and the task force officer investigated the tent and observed it appeared to be occupied. The task force officer gave loud verbal commands for the occupants to come out of the tent. Two Hispanic males emerged from the tent and were taken into custody without incident. All team members were displaying their badge of authority. The subjects did not speak English and communications were limited. The subjects were removed from the area and transported to the nearest Federal approved jail in Harrisonburg. Forest Service Law Enforcement Officer Ron Jackson informed U.S. Magistrate Judge B. Waugh Criggler of the arrest and he directed the subjects to be held in custody pending an initial appearance hearing. Officer Jackson booked the subjects into custody at the Rockingham County Regional Jail.

Further investigation at the site by the team members revealed four marijuana gardens were planted and more than 6,350 plants were counted. The marijuana plants were arranged in groupings or mounds of between five to ten plants. One of the gardens contained vegetables as well and only had approximately 40 to 60 marijuana plants in it. There was another footpath leading from the tent to the second garden. This path was also well worn and approximately 80 yards long. The tent contained food wrappers and other items of interest including two cell telephones. Cell telephones are a primary means of communications for drug trafficking organizations. There was an abundance of toxic substances at the site in the form of fertilizers, insecticides and pesticides.

Officer Jackson obtained the assistance of a Spanish speaking interpreter, Mr. Ramon Ochoa, and prepared to interview the subjects. Mr. Ochoa has previously assisted Officer Jackson with other investigations when interpretive services were needed. Officer Jackson provided a USDA Forest Service Advice/Waiver of Rights form to Mr. Ochoa and he read it in Spanish to one of the subjects who identified himself as Joaquin Berumen Cortes. Cortes waived his rights and printed his name on the form. Officer Jackson and Mr. Ochoa also affixed their signature to the form. Officer Jackson asked Mr. Ochoa to direct questions to Cortes. Cortes admitted he unlawfully entered the United States from Mexico four to five years ago and was deported from North Carolina. Two years later he re-entered the United States at Texas. Cortes admitted he planted approximately 600 to 700 marijuana seeds, with the assistance of the other arrested subject, over a period of two days. He admitted adding fertilizer to the marijuana plants and watering them. Cortes admitted he knew it was illegal to grow marijuana plants. Cortes stated there were three marijuana gardens at the site and he agreed to draw a crude map of the site area. Cortes drew a diagram that included three larger shapes. He located the tent on the drawing with a smaller shape. The tent was in between the first and second marijuana gardens which matched the description given by Officer Buchanan. Cortes only drew three gardens on his diagram which did not exactly match the number of marijuana gardens discovered by the investigation team. It is unknown if Cortes did not consider the mixed garden as significant or merely provided false information. Cortes printed his first name under the drawing.

Officer Jackson supplied a consular rights form to Mr. Ochoa and he read it to Cortes. Cortes declined to have his embassy notified and placed an X under the "NO" answer. The interview with Cortes lasted approximately 33 minutes.

Officer Jackson followed the same investigative procedure with the second subject who identified himself as Joaquin Gonzales Vicencio. Mr. Ochoa read the Advice/Waiver of Rights form to Vicencio and he waived his rights. Vicencio printed his name on the form and Officer Jackson and Mr. Ochoa signed it. Vicencio admitted he unlawfully entered the United States in 2008 at Arizona. Vicencio admitted he had been deported seven times from the United States. He admitted being arrested for a cocaine drug offense in Woodstock, Virginia, and stated he was incarcerated six months as a result. Later investigation revealed Vicencio was arrested in 2008 in Strasburg, VA, for a drug felony offense. The charge was reduced to a misdemeanor and he was sentenced to 12 months of custody. Vicencio admitted planting approximately 600 to 700 marijuana seeds. He stated there were three marijuana gardens planted. Vicencio admitted he added fertilizer to the marijuana plants and sometimes watered the plants. He knew growing marijuana was illegal. Vicencio drew a diagram of the arrangement of the marijuana gardens at the site. He drew three shapes and then placed a dome shape between the first and second garden. He labeled the dome shape, "casa", which translates as house in Spanish. Vicencio printed his name under the diagram and dated it. The diagram produced by Vicencio was consistent with the one drawn by Cortes and comported closely, though not perfectly, with the results of the investigation at the site.



Officer Jackson supplied a consular rights form to Mr. Ochoa and he read it to Vicencio. Vicencio asked to have his embassy notified and placed an X under the "YES" answer. The interview with Vicencio lasted approximately 22 minutes.

Officer Jackson collected fingerprints from both subjects using electronic digitizing equipment that incorporates the Secure Communities program. The fingerprints were transmitted to the Virginia State Police. A jailer prepared alien inquiries and transmitted them to DHS ICE. ICE personnel called the jail and alerted the jailers that both subjects were positively identified and deportation detainers were sent by fax to the jail. Cortes had a birth certificate with identification data that matched the data supplied by ICE except for the birthdate. Cortes is listed in the NCIC database for an alien violation by the same information as provided by ICE.

Vicencio's fingerprints generated a Virginia State Identification number that returned to a criminal history. His fingerprints matched an individual in the ICE database identified as Joaquin Gonzalez Chairez. The date of birth for Chairez was one day different than the date given by the subject who identified himself as Joaquin Gonzales Vicencio. Officer Jackson called the ICE center and they verified identification was done from fingerprints.

The marijuana site investigated by the Federal and State agents on July 2, 2013, is on property under the jurisdiction of the USDA Forest Service. The Forest Service alleges that both subjects cultivated or attempted to cultivate marijuana during 2013 on Federal property in violation of Title 21, United States Code, section 841(a)(1). Furthermore, the named subjects devised a plan to violate the drug laws of United States and took overt steps in the furtherance of the plan by planting marijuana seeds on Federal property and nurturing the seeds into marijuana plants thus completing a conspiracy in violation of Title 21, United States Code, section 846.

