IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No.: 5:13CR00015 |
| | : |
| v. | : |
| | : |
| JOAQUIN GONZALEZ VICENCIO, | : Violations: |
| | :   21 U.S.C. §846 & 841(a)(1), (b)(1)(A) |
| Defendant | :   21 U.S.C. §841(a)(1) & (b)(1)(A) |
| | :   21 U.S.C. §841(a)(1) & (b)(6) |
| | : |

## SENTENCING MEMORANDUM

### INTRODUCTION

The Defendant adopts and realleges the events and dates describes in the procedural background of the Government's Sentencing Memorandum on page 5.

The Defendant takes issue with the presentence report insofar as paragraphs 14 and 17 are concerned. The Defendant takes issue with the fact that the Defendant should be sentenced at the high end of the guideline range running from 121 months to 151 months.

### OBJECTIONS TO

### SPECIFIC CONCLUSIONS OF THE GOVERNMENT

This Defendant takes issue with the Government's contention that the evidence at trial proved that this Defendant had been working, with the other defendant, to protect "their crop" while they lived in the forest. This Defendant takes issue with the Government's position that the Defendant's efforts were "to protect their lucrative investment." The evidence at trial clearly showed that this Defendant was nothing more than a field hand who had been recruited by some

unknown character named Jesus near Winchester, Virginia, transported to the grow site in a Cadillac, dropped off, and instructed to remain there and cultivate the crop, subsequent to which the Defendant would be paid at a later time. It is interesting from an evidentiary standpoint to note that, at the time of the Defendant's discovery and arrest, there was no U. S. currency of any consequence found on this Defendant or the other defendant, nor was there any substantial currency stashed in any part of the tent in which the two defendants were living. For the government to say that this Defendant was protecting his investment and his crop is not borne out by the evidence and is totally inaccurate; this Defendant was working for someone else who masterminded the operation from its inception. As described below in this sentencing memorandum, no tangible personal property was found at the grow site which would indicate that this Defendant was any more than a field laborer whose task was to plant, water, and/or otherwise cultivate the marijuana plants.

In paragraph II of its Memoranda, page 8, the Government argues that the Court shall consider the nature and circumstances of the offense and the history and characteristics of the Defendant. On page 7 of its Memoranda, the Government argues that there are aggravating factors present in this case. Actually, there are no aggravating factors in this case. The arrest went without incident, there was no drugs, guns or violence present, the Defendant gave a statement to law enforcement at the time of his arrest, and then requested that his case be heard by a jury. Below in this memoranda the Defendant makes his point that four base points should not have been added to his score for the reasons contained therein. This Defendant had a criminal history of zero. Other than a misdemeanor conviction in Shenandoah County, the Defendant's record was clean. This is hardly indicative of a career criminal involved in drug trafficking.

## OJBECTIONS TO PARAGRAPHS 14 AND 17 OF
## THE PRESENTENCE REPORT

The Defendant objects to the addition of two points for a violation of USSG 2D1.1(b)(13). The Defendant objects to the addition of two points under paragraph 14 of the presentence report for the use of pesticides, insecticides and fertilizers at the grow site. In its sentencing memoranda, the Government attached photographs of the objectionable items. Exhibit 11-14 shows a bucket labeled "Hawk" which kills rats and mice. Exhibit 5-19 shows a discarded container of Ortho insecticide soap which kills insects and is useful in organic gardening. Exhibit 5-17 shows a plastic bag and three containers, one of which is a canister of seven powder dust, used to control Japanese beetles. Exhibit 5-59 shows a plastic container of Bayer natria, which is insect control for use on roses, flowers, fruits and vegetables. Exhibit 5-55 shows two containers of insecticidal soap, the natria, plastic bags, and some soft drink cans.

Exhibit 11-27 shows a bag which contained DeCon, a rat killer.

Exhibit 5-76 shows a container of the garden insecticide sevin which is used for vegetables, fruits and ornaments.

Exhibit 6-11 shows five or six empty plastic bags and one metal bottle container.

Exhibit 6-8 shows a discarded bag of DeCon mice and rat killer.

Exhibit 5-50 shows a collage of empty containers, soft drink cans, and various items described in this paragraph in an area which looks to be no bigger two or three feet by six feet.

The Government argues that this Defendant used fertilizers, insecticides, pesticides, and rat poison around the site. The Government says the Defendant used the dump area where the discarded items were thrown. The Government goes on to argue that timber and land had been cleared to plant marijuana plants and the camp site, which caused destructive environmental

degradation in the area. As previously pointed out, this Defendant cannot be connected to timber and land that had been cleared. The Government states that the grow site was uphill from a fresh water stream and that the chemicals used posed serious risks to wildlife. As outlined in this paragraph, the chemicals used, other than rat poison, can be used by gardeners for roses, flowers, and vegetables. It would be a stretch of the imagination to argue that these items, which can be used by any homeowner, posed a serious threat to wildlife. Rat poison, which was used apparently from what we can tell, does not pose a serious risk to the environment at all. The Defendant should not have two points added to his base level score for this alleged violation.

Defendant objects to Paragraph 17 of the presentence report for adding two points for obstructing or impeding justice. USSG 3C1.1 states that the defendant is guilty if he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution or sentencing of the instant offense. The commentary to Section 3C1.1 states that this provision is not intended to punish a defendant for the exercise of a Constitutional right. A defendant's denial of guilt, refusing to admit guilt, or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the Court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice. The Government complains that the Defendant made an admission prior to trial of his involvement in the marijuana grow operation but then proceeded to trial, mounting a vigorous defense without any evidentiary stipulations. The Government complains that at the time of his arrest, the Defendant never accepted responsibility for all of his actions nor provided any information that would have

enabled law enforcement to identify additional co-conspirators responsible for this significant operation. The answer to this argument is that that the Defendant has a Constitutional right to have his case heard by a jury, as it was explained to him by the Court prior to trial. The Defendant has a right to mount a vigorous defense and explain his version of the events. To charge him with obstruction is unjustified and amounts to punishment for exercising his Constitutional right to a jury trial. The Defendant should not be assessed two points for going to trial.

## CONCLUSION

The Defendant takes issue with the fact that the Defendant should be sentenced at the high end of the guideline range. The Government seems to be fixated on the fact that this Defendant's actions involve "the largest marijuana-growing operation discovered by law enforcement in the area". The Government states that law enforcement uncovered an unprecedented quantity of marijuana which was entrusted to and protected by serious players in a drug trafficking organization. Again, this Defendant's role in the drug trafficking organization, if there was one, was minimal. There was no resistance, no violence, an initial cooperation with arresting officers, and otherwise an attempt to protect the Defendant's Constitutional rights. For the Government to argue that this case is egregious simply because a large amount of marijuana was uncovered is erroneous; the insecticides or pesticides or other compounds discovered do not, in and of themselves, pose a high risk of danger to the national forest.

The Court can deviate from the guideline range if it so desires. Your Defendant requests the Court to seriously consider a sentence below the low end of the guidelines by virtue of all of the evidence and facts generated in the investigation and prosecution of this case.

          Respectfully submitted,

          JOAQUIN GONZALEZ VICENCIO

/S/ F. C. Coyner
F. C. Coyner, Esquire
279 Draft Avenue
Stuarts Draft, Virginia 24477
(540) 337-1116
VSB # 15374
Counsel for Defendant

## CERTIFICATE

    I hereby certify that I have electronically filed the foregoing document with the clerk of the Federal Court using the CM/ECF system which will send notification of such filing to all counsel of record this 17th day of June, 2014.

          /S/ F. C. COYNER
          F. C. Coyner
          279 Draft Avenue
          Stuarts Draft, Virginia 24477
          (540) 337-1116